# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT PADUCAH

GLENN D. ODOM, II                                                                            PLAINTIFF

v.                                                           CIVIL ACTION NO. 5:13CV-P211-R

TABITHA THOMPSON *et al.*                                           DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff Glenn D. Odom, II, filed the instant *pro se* 28 U.S.C. § 1983 action proceeding *in forma pauperis*. This matter is before the Court on the initial review of the complaint (DN 1) and supplement to the complaint (DN 10) pursuant to 28 U.S.C. § 1915A. Upon review, the Court will allow some of Plaintiff's claims to proceed and will dismiss others.

### I. SUMMARY OF FACTUAL ALLEGATIONS AGAINST DEFENDANTS

Plaintiff is an inmate at the Kentucky State Penitentiary (KSP). He sues the following employees of KSP: Tabitha Thompson and Virgil Hughes, corrections officers; Randy White, the Warden of KSP; Hobert Huddleston, a unit administrator; Hope Gresham, a licensed practical nurse; Teresa Peters, an "Open records/record clerk"; and Skyla Grief, a grievance coordinator. He sues Defendants White and Huddleston in both their individual and official capacities and sues all other Defendants in only their individual capacities.

Plaintiff first sets forth a section with the heading "Facts of Complaint, Extremely Relevant History" wherein he discusses the facts involved in a separate action he filed in this Court, *Odom v. Lynn, et al.*, Civil Action Number 3:13CV-P60-R. The Court construes this section to be intended to provide background on Plaintiff's history of conflict with Defendants Thompson and Huddleston and not to allege facts to be asserted in the present action.

In his next section with the heading "Present complaint," Plaintiff reports that he is housed in KSP's "7 cellhouse," a super-max segregation unit which allows no inmate-to-inmate contact. He states that another inmate, Micheal Force, was also housed in the unit for nearly two years and had a history of "bizarre and dangerous behavior[,]" including attacks on inmates and staff and "dozens of other <u>very</u> <u>dangerous</u> disciplinary convictions." (Emphasis by Plaintiff.) Plaintiff states that inmate Force's "ability to obtain weapons are so successful that the seg. staff started giving him cups of coffee for pieces of metal. This trade out (weapons for coffee) occurred, at least, twice per week." He states that on September 25, 2012, he wrote Defendant Warden White "a letter (<u>with a razor blade taped to the page</u>!!!) explaining that razors are all over seven (7) cellhouse and specific inmates that possessed them[,]" including inmate Force. (Emphasis by Plaintiff.) Plaintiff maintains that Defendant White "refused to order, or conduct, any shakedown to ensure the safety of inmates and staff. The razors are used to make mental 'shanks' (knives)."

According to the complaint, Plaintiff also "expressed that he was to be stabbed by certain inmates to Warden White and the disciplinary committee . . . ." Plaintiff states that Defendant White still refused to order a shakedown to rid 7 cellhouse of the razors. He states that on or around October 7, 2012, "plaintiff <u>continuously</u> warned that inmates on his walk would stab him by trapping their doors or getting the control panel ofc. to open plaintiff's cell." (Emphasis by Plaintiff.) However, Plaintiff contends, Defendant White refused to order a shakedown. Plaintiff states that in July 2013 inmate Force informed Defendant White that he had a razor in his cell in a disciplinary appeal and Defendant White refused to order a shakedown.

Plaintiff states that in 7 cellhouse the door of one inmate's cell is never to be opened at the same time as another inmate's. However, he reports that on five dates between July 5 and

August 1, 2013, the control officer opened the door to Plaintiff's cell at the same time as another inmate's. These occurrences happened without incident. He states that he spoke with Defendant Huddleston about the issue and that Huddleston said, while "smirking" at Plaintiff, that he would address the issue with staff. Plaintiff contends that Huddleston never addressed the issue. He contends that the cell doors were being opened at the same time by staff deliberately to put him at risk of an attack by another inmate.

Plaintiff reports that on August 6, 2013, at approximately 9:15 am his "cell door was opened for a shower. As plaintiff stepped out of his cell to shower inmate Micheal Force's cell was already opened. Micheal Force had a metal shank and stabbed plaintiff nine (9) times in the back, neck, shoulders, etc. and six (6) puncture wounds required seven (7) stitches." Plaintiff contends that the stabbing was a "'set-up[.]'" Plaintiff states that Defendant Thompson was working the 7 cellhouse control panel at the time of his stabbing. He contends that she intentionally opened the cell doors out of sequence so that his and inmate Force's doors would be open at the same time to allow the assault to occur. He states, "As plaintiff stepped out of his cell to walk toward the shower he clearly saw ofcs Hughes and Tabitha Thompson watching Micheal Force come at plaintiff with a knife and stab plaintiff nine (9) times . . . ." He maintains that KSP staff stated that inmate Force "trapped his cell door" but that a "video camera clearly shows his cell door stop closing at one (1) foot . . . ." He contends that whether Force trapped his door open or staff intentionally opened it, both Defendants Thompson and Hughes knew of the risk to Plaintiff. Plaintiff also contends that, although officers knew that Force had stabbed him, they still allowed Force to return to his cell and flush the razor down the toilet.

According to the complaint, after Plaintiff was stabbed, Defendant Nurse Gresham was called to examine Plaintiff. However, she looked at Plaintiff through a window and left without giving him any medical attention. About an hour and a half later at 10:45 am, Defendant Gresham came back to 7 cellhouse with non-Defendant nurse Wilkerson. Wilkerson examined Plaintiff and counted nine puncture wounds, six of which required stitches. Plaintiff states that Defendant Gresham then suggested to Wilkerson that they go to lunch before giving Plaintiff stitches and that he did not receive stitches until 12:55 pm. While Plaintiff received stitches, Defendant Gresham made rude comments to him. Plaintiff states, "Gresham <u>clearly</u> refused to give plaintiff any treatment whether the reason was to cover for Micheal Force or cover for security staff's cell door opening . . . ." Plaintiff further represents that after he filed a grievance against Defendant Gresham she "became enraged" and laughed at him and mocked him.

Plaintiff further states that although Defendant Huddleston and other non-Defendant KSP officials said that they would press charges against inmate Force, "KSP is intentionally refusing to let plaintiff press charges for the attempted murder." He describes various conversations he had with Defendants Huddleston and White in which he asked them about pressing charges. Defendant White told him that the matter had been turned over to the Lyon County Commonwealth's Attorney's Office, but according to Plaintiff, it had not.

In another section with the heading "Hobert Huddleston's repeated attempts to allow plaintiff physical harm," Plaintiff states that Defendant Huddleston allowed inmate Force to "write threatening, racist, and dangerous letters to dozens of inmates calling plaintiff 'n****' and stating that 'Odom [plaintiff] went out there and told the prison gaurds that [Force] stabbed him." (Brackets used by Plaintiff.)

4

Plaintiff further states that after he wrote a mental health request "begging for help" because he thought officers were about to assist inmates to try to kill him, on September 15, 2013, his cell door was opened again at the same time another inmate walked down the hallway. He contends that the inmate has a history of severely beating inmates. He states that this "was, again, done intentionally to harm plaintiff." However, the other inmate did not attack Plaintiff. Plaintiff again complained to Defendants White and Huddleston.

Plaintiff states that he is "terrified to walk down the hallway for showers, recreation, legal aide calls, and attorney calls. Plaintiff has to see a psychologist for such issues of nightmares and extreme nervousness . . . ." He also had to see a psychiatrist for "continued paranoia, nervousness, and severe nightmares that have caused plaintiff to defecate on himself during sleep. . . . Plaintiff will never be the same."

In the next section titled "Actions of Teresa Peters," Plaintiff states that when he began to request "specific documents/evidence through open records (which proved that plaintiff sent Warden White actual razor explaining that weapons were being sold in cellhouse seven) Theresa Peters destroyed such evidence/records . . . and refused Plaintiff other allowable requests such as incident reports on his stabbing." Plaintiff states that Defendant Peters "insisted that plaintiff's evidence 'cannot be located.'" He also states that Defendant Peters "destroyed" an appeal and told him that it had not been scanned into the records system, but he "later found the original documents baring the Warden's 'received' stamp."

In the next section with the heading "Actions of Skyla Grief," Plaintiff states, "Plaintiff is not writing another three (3) pages on this defendant – as this court has held, several times, that inmates have no constitutional rights to an effective grievance procedure." He contends that

5

"[t]his issue is only being addressed (with countless attachments) to use in a Rule 12(b)(6) reply motion and/or summary judgment reply."

As relief, Plaintiff requests "a declaration that the acts and omissions described herein violate his rights under the constitution and law of the United States," compensatory and punitive damages, and injunctive relief in the form of ordering Defendants Huddleston and White to allow Plaintiff to press charges against inmate Force.

The complaint refers to 233 pages of attachments, which include grievances and appeals, affidavits, letters, memoranda, open records requests, disciplinary reports, and photographs. For the purposes of initial review, the Court is not required to wade through lengthy exhibits to find support for Plaintiff's claims. *See Jinadu v. Fitzgerald*, No. 99-4259, 2000 U.S. App. LEXIS 23650, at *3-4 (6th Cir. Sept. 15, 2000) ("The district court's duty to construe Jinadu's *pro se* pleadings liberally did not obligate it to analyze attachments to Jinadu's complaint in order to speculate about the claims Jinadu may be attempting to bring."); *Young Bey v. McGinnis*, No. 98-1930, 1999 U.S. App. LEXIS 23676, at *4 (6th Cir. Sept. 23, 1999) ("[The plaintiff] refers the court to an attachment consisting of a minimum of fifty pages. The district court's duty to construe Young Bey's *pro se* pleadings liberally did not obligate it to analyze attachments to Young Bey's complaint in order to speculate about the claims Young Bey may be attempting to bring."). It is Plaintiff's responsibility to allege the facts supporting his claims in the body of his complaint. The Court presumes that Plaintiff has presented the facts of all of the claims he wishes to assert in the body of his complaint.

### III. STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any

portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* §§ 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). When determining whether a plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in a light most favorable to the plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)).

## IV. ANALYSIS

### A. Official-capacity claims

Plaintiff sues Defendants White and Huddleston in both their official and individual-capacities. "Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166

(1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Because White and Huddleston are officers or employees of the Commonwealth of Kentucky, the claims brought against them in their official capacities are deemed claims against the Commonwealth of Kentucky. *See Kentucky v. Graham*, 473 U.S. at 166. State officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, because Plaintiff seeks money damages from state officers or employees in their official capacities, he fails to allege cognizable claims under § 1983. Additionally, the Eleventh Amendment acts as a bar to claims for monetary damages against these Defendants in their official capacities. *Kentucky v. Graham*, 473 U.S. at 169. Therefore, Plaintiff's official-capacity claims against White and Huddleston for monetary damages will be dismissed for failure to state a claim upon which relief can be granted and for seeking monetary relief from Defendants who are immune from such relief.

Plaintiff seeks injunctive relief in the form of an order to Defendants White and Huddleston to press charges against inmate Force. However, the Court does not have the power to direct that criminal charges be filed against anyone. *Peek v. Mitchell*, 419 F.2d 575, 577-78 (6th Cir. 1970); *Fleetwood v. Thompson*, 358 F. Supp. 310, 311 (N.D. Ill. 1972). Therefore, Plaintiff's official-capacity claims against White and Huddleston fail for injunctive relief, as well.

**B.     Individual-capacity claims**

*Failure to protect*

In the prison context, the Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee the safety of inmates. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "Deliberate indifference of a constitutional magnitude may occur when prison

8

guards fail to protect one inmate from an attack by another." *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990). Construing the allegations as true, as the Court is required to do at this stage, *Boag v. MacDougall,* 454 U.S. 364 (1982) (per curiam), the Court will allow Plaintiff's failure-to-protect claims to proceed against Defendants White, Huddleston, Thompson, and Hughes in their individual capacities based on Plaintiff's allegations concerning an attack by inmate Force and his allegations that inmate Force was allowed to write letters to other inmates concerning Plaintiff. In allowing these claims to proceed, the Court passes no judgment on their ultimate merit.

*Delay in medical attention*

Plaintiff alleges Defendant Gresham denied him medical treatment immediately after the attack by inmate Force. With regard to prisoners' claims of denial of medical care, "'[d]eliberate indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. *Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005). To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." *Taylor v.*

9

*Boot*, 58 F. App'x 125, 126 (6th Cir. 2003) (citing *Farmer v. Brennan*, 511 U.S. at 837-47). "'[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed.'" *Napier v. Madison Cnty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (quoting *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)).

Plaintiff complains that he was denied treatment for the cuts on his body for several hours after the attack by inmate Force. However, Plaintiff fails to allege what detrimental effect resulted from the several-hour delay in receiving medical attention. *See Love v. Growse*, No. 5: 08-303-KSF, 2008 U.S. Dist. LEXIS 79966, *4 (E.D. Ky. Oct. 3, 2008) ("While such a delay is unfortunate and caused the Plaintiff some discomfort, it is insufficient to establish a violation of his constitutional rights."). Therefore, Plaintiff has failed to state an Eighth Amendment claim based on the delay in receiving the medical attention, and the claim will be dismissed.

*Mental health treatment*

To the extent Plaintiff is also asserting a claim for denial of mental health treatment, that claim also fails. Plaintiff states that he "has to see a psychologist for such issues as nightmares and extreme nervousness . . . ." Therefore, it is clear that he has received some mental health treatment. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). A court generally will not find deliberate indifference when some level of medical care has been offered to the inmate. *Christy v. Robinson*, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002). Mere disagreement over medical treatment cannot give rise to a constitutional claim of deliberate indifference. *Durham v. Nu'Man*, 97 F.3d 862, 869 (6th Cir.

1996).  Thus, a difference in medical judgment between an inmate and prison medical personnel regarding the appropriate diagnosis or treatment is not enough to state a deliberate-indifference claim.  *Ward v. Smith*, No. 95-6666, 1996 U.S. App. LEXIS 28322, at *2 (6th Cir. Oct. 29, 1996).  Since Plaintiff has received mental health treatment, his disagreement with the adequacy of the treatment fails to state a claim under § 1983 and will be dismissed.

*Verbal harassment*

To the extent that Plaintiff alleges that he was verbally abused or harassed by any Defendant, the claim fails.  The Eighth Amendment proscribes punishments which involve the unnecessary and wanton infliction of pain.  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).  However, harassing or degrading language by a prison official, while unprofessional and despicable, does not amount to a constitutional violation.  *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) ("[V]erbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim."); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Searcy v. Gardner*, No. 3:07-0361, 2008 U.S. Dist. LEXIS 118217, at *4 (M.D. Tenn. Feb. 11, 2008) ("A claim under 42 U.S.C. § 1983 cannot be based on mere threats, abusive language, racial slurs, or verbal harassment by prison officials.").  Therefore, the claims alleging verbal abuse and harassment against any of the Defendants fail to state a claim upon which relief may be granted and will be dismissed.

*Refusal to prosecute*

Plaintiff contends that Defendants have refused to allow him to press charges against inmate Force for attempted murder.  As a private citizen, Plaintiff does not have a constitutional right to initiate or compel the initiation of criminal proceedings against another individual.  *See*

*Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *McCrary v. Cnty. of Nassau*, 493 F. Supp. 2d 581, 588 (E.D.N.Y. 2007) ("A private citizen does not have a constitutional right to compel government officials to arrest or prosecute another person."); *Osuch v. Gregory*, 303 F. Supp. 2d 189, 194 (D. Conn. 2004) ("An alleged victim of a crime does not have a right to have the alleged perpetrator investigated or criminally prosecuted."); *White v. City of Toledo*, 217 F. Supp. 2d 838, 841 (N.D. Ohio 2002). Therefore, Plaintiff cannot state a constitutional violation under § 1983 for any party's failure to initiate the arrest or prosecution of inmate Force.

*Defendant Peters*

Plaintiff alleges that when he requested documents through open records requests, Defendant Teresa Peters "destroyed" documents that he requested and "refused Plaintiff other allowable requests . . . ." A violation of the Open Records Act, a Kentucky statute codified at KRS § 61.870, *et seq.*, does not rise to the level of a constitutional violation and is therefore not a cognizable claim under § 1983. *Gordon v. Joyner*, No. 3:08CV-667-H, 2009 U.S. Dist. LEXIS 53006, at *16 (W.D. Ky. June 22, 2009).

To the extent that Plaintiff alleges that Defendant Peters destroyed documents in violation of the Due Process Clause, the Supreme Court has held that where adequate remedies are provided by state law, the loss or destruction of property does not state a claim cognizable under the Due Process Clause of the Fourteenth Amendment. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *rev'd on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). In order to assert a claim for deprivation of property without due process under § 1983, a plaintiff must allege that the state post-deprivation procedures are inadequate to

remedy the deprivation. *Parratt*, 451 U.S. at 543-44. The law of this Circuit is in accord. For example, in *Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983), the court held that "in § 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Id.* at 1066. Plaintiff has made no such allegation in this case. Moreover, the Court notes that Plaintiff has attached 233 pages of documents in support of his claim. He clearly was able to obtain ample documentation to prepare his case. Therefore, Plaintiff's claim concerning the alleged denial of open records requests and destruction of documents by Defendant Peters will be dismissed for failure to state a claim upon which relief may be granted.

*Defendant Grief*

Plaintiff names Grievance Coordinator Grief as a Defendant. However, in the body of his complaint, Plaintiff states, "Plaintiff is not writing another three (3) pages on this defendant – as this court has held, several times, that inmates have no constitutional rights to an effective grievance procedure." Therefore, the Court presumes that any claims Plaintiff asserts against Defendant Grief concern the handling of his grievances. As Plaintiff acknowledges, there is "no constitutionally protected due process interest in unfettered access to a prison grievance procedure." *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005). By the same token, a plaintiff cannot maintain a claim against a prison official based solely on his or her denial of the plaintiff's grievance. "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). A plaintiff's claim is against the

subjects of his grievances, not those who merely decided whether to grant or deny the grievances. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (same). Thus, where the allegation against a defendant relates only to the denial of a grievance, a plaintiff fails to allege any personal involvement by the defendant in the alleged constitutional violation. *Id.* Accordingly, Plaintiff's § 1983 claim against Defendant Grief will be dismissed for failure to state a claim upon which relief may be granted.

### *Infliction of emotional distress*

Plaintiff also asserts state-law claims of intentional infliction of emotional distress against Defendants White, Thompson, and Hughes and a claim of negligent infliction of emotional distress against Defendant Huddleston. Upon review, the Court will allow these claims to go forward against these Defendants in their individual capacities.

**IV.**

For the reasons set forth herein, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that Plaintiff's official-capacity claims against Defendants White and Huddleston and his individual-capacity claims based on his allegations of a delay in medical care, denial of mental health treatment, verbal harassment, and refusal to prosecute are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that all claims against Defendants Gresham, Peters, and Grief are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

The Clerk of Court is **DIRECTED to terminate** Defendants Gresham, Peters, and Grief as parties to this action.

The Court will enter a separate Scheduling Order governing the claims that have been permitted to proceed.

Date:


cc: Plaintiff, *pro se*
　　 Defendants
　　 General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel
4413.010

15